UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RAYMONE JACKSON, #689206**, | 2:18-cv-11384 |
| Petitioner, | **OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL** |
| v. | |
| **TONY TRIERWEILER**, | |
| Respondent. | |

## I.   Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Raymone Bernard Jackson ("Petitioner") was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, torture, MICH. COMP. LAWS § 750.385, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, assault with a dangerous weapon, MICH. COMP. LAWS § 750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced to life imprisonment without parole on the first-degree murder conviction, concurrent terms of 30 to 45 years imprisonment on the assault with intent to commit murder convictions, a concurrent term of 3 to 6 years

imprisonment on the assault with a dangerous weapon conviction, a concurrent term of 3 to 7½ years imprisonment on the felon in possession conviction, and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2014.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the denial of a separate jury motion, the admission of his co-defendant's statements, text messages, and a rap song, and the failure to instruct the jury on involuntary manslaughter. For the reasons stated, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II.   Facts and Procedural History

Petitioner's convictions arise from a retaliatory shooting that he committed outside a Detroit residence on July 1, 2014 with co-defendant Rapheal Daniel-Jordan Hearn. The shooting resulted in the death of the two-year-old daughter of the intended target, Kenneth French, as well as gunshot injuries to French and a twelve-year-old girl. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants plotted revenge against [Kenneth] French and
> his family for French's role in the shooting of Hearn three

> months earlier at a motorcycle club. On July 1, 2014,
> defendants located French at [Toni] Holt's house, where
> French's two-year-old daughter Kamiya was playing outside
> with Holt's 12–year–old daughter Chelsea. French and Holt
> were sitting on the front porch while the children played.
> Defendants first drove past the house in a white vehicle and
> then drove behind the house and stopped. Defendant
> Jackson got out of the vehicle and, after approaching French
> from the side of Holt's house, started shooting. Kamiya,
> Chelsea, and French were shot. Jackson then returned to the
> waiting vehicle and was driven away from the crime scene.
> Kamiya died from a gunshot to the head. Chelsea and
> French were hospitalized for multiple gunshot injuries.

*People v. Jackson*, No. 306952, 2016 WL 6127659, *1 (Mich. App. Oct. 18, 2016).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed Petitioner's convictions. *Id.* at *1-6. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Jackson*, 500 Mich. 1058, 898 N.W.2d 586 (2017).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. His Eighth Amendment constitutional right to be free
from cruel and unusual punishment was violated
where there was insufficient evidence to convict him of

3

torture.

II.     He was denied a fair trial by the trial court's denial of
        a motion for separate trials when the co-defendant's
        statements were inculpatory toward him (Petitioner).

III.    He was denied the right to a fair trial when the trial
        court admitted evidence of co-defendant's statements
        and text messages and evidence that they listened to a
        rap song called "Homicide."

IV.     The trial court violated his due process right to present
        a defense by declining to instruct the jury on
        manslaughter as a lesser offense.

Respondent filed an answer to the petition contending that it
should be denied.

### III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard
of review that federal courts must use when considering habeas
petitions brought by prisoners challenging their state court convictions.
The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or

(2)     resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for

5

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when

6

there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

7

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Discussion

### A.   Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his conviction for torture. Petitioner frames this issue in terms of the

8

Eighth Amendment on habeas review, but did not do so in the state courts. Respondent contends that this claim is unexhausted to the extent that Petitioner relies upon the Eighth Amendment and that it otherwise lacks merit.

Here, Petitioner has not exhausted an Eighth Amendment-based sufficiency of the evidence claim in the state courts. Nonetheless, Petitioner is not entitled to relief on any such claim as he fails to cite authority which applies the Eighth Amendment to a sufficiency of the evidence claim. The Eighth Amendment addresses the punishment for a crime, not the validity of a conviction underlying that punishment. *See, e.g., Roper v. Simmons*, 543 U.S. 551, 560 (2005).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C.

9

§ 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal habeas court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Rather, a federal habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

The Michigan Court of Appeals considered the sufficiency of the evidence claim on direct appeal, applied the *Jackson* standard, and denied relief. The court explained:

> A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by considering the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Harverson*, 291 Mich App 171, 175; 804

10

NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v. Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

MCL 750.85 provides:

> (1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.
>
> (2) As used in this section:
>
> (a) "Cruel" means brutal, inhuman, sadistic, or that which torments.
>
> (b) "Custody or physical control" means the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority.

Thus, the elements of torture are (1) the intent to cause cruel or extreme physical or mental pain and suffering, (2) the infliction of great bodily injury or severe mental pain or suffering, and (3) the victim is within the person's custody or physical control. Jackson only argues on appeal that the prosecution failed to establish that he had French in his custody or physical control.

Again, from French's testimony, the text messages, and the rap song, the jury could infer that Jackson and Hearn intended to retaliate against French by targeting his

family, specifically forcing him to watch his young daughter suffer. The facts demonstrate that French was sitting on the porch while Kamiya and other neighborhood children played in front of the house. When he saw Jackson, French started to walk down the porch steps to greet him. Then, according to French and other witnesses, Jackson shot him. Holt testified that the shooting prevented French from "stray[ing] too far" and he ultimately retreated back to the porch. A bystander also testified that French was "getting shot at" so he could not get off the porch. The jury could conclude that the first shot forcibly restrained French to the porch area while, and so that, Jackson could then shoot and kill Kamiya without French's interference.

In his brief on appeal, Jackson focuses on the fact that the shooting occurred "quickly," and thereby argues that he could not obtain the requisite custody or physical control. But the plain language of MCL 750.85 places no temporal limitations on this element. Given this Court's standard of review requiring facts to be viewed in a light most favorable to the prosecution, we conclude that there was sufficient evidence that French was in Jackson's custody or physical control to support his torture conviction.

*Jackson*, 2016 WL 6127659 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The evidence and testimony at trial, if believed, established the three elements of torture under Michigan law. French's testimony and the messages between Petitioner and his co-defendant show that they planned to retaliate against French by targeting his family and

establish the intent to cause cruel or extreme physical or mental pain and suffering. The shooting and resulting death and injuries to the victims establish the infliction of great bodily injury or severe mental pain or suffering. And shooting at French to trap him on the porch establishes that French was within Petitioner's custody or physical control. The prosecution presented sufficient evidence for a reasonable jury to conclude that Petitioner engaged in torture.

To the extent that Petitioner challenges the Michigan Court of Appeals' interpretation of state law on torture, i.e., by arguing a time element, he is not entitled to habeas relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

Additionally, to the extent that Petitioner challenges the jury's evaluation of the testimony and evidence presented at trial, he is similarly not entitled to habeas relief. It is the job of the fact-finder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th

Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

## B.   Separate Trial/Jury Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court denied his request for a separate trial or separate jury from that of his co-defendant. Respondent contends that this claim lacks merit.

On federal habeas review, the issue of severance is governed by state law. *See Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). Further, the United States Court of Appeals for the Sixth Circuit has held that a severance claim cannot provide a basis for habeas relief because the United States Supreme Court has never clearly established a federal constitutional right to severance. *See Phillips v. Million*, 394 F.3d 395, 398 (6th Cir. 2004). Nevertheless, the Court acknowledges that a state law error may warrant habeas relief if it deprives a criminal defendant of the fundamental due process right to

14

a fair trial. *See, e.g., Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010).

Courts favor the joinder of defendants charged with the same crime because it is more efficient than conducting separate trials. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987) (stating that joint trials "play a vital role in the criminal justice system"). When defendants are properly joined, courts should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The mere fact that there is hostility among the defendants or that one defendant may try to save himself at the expense of another is not a sufficient ground to require separate trials. *United States v. Pierce*, 62 F.3d 818, 830-31 (6th Cir. 1995); *Ringstaff v. Mintzes*, 539 F. Supp. 1124, 1131 (E.D. Mich. 1982). "Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993). "Mutually antagonistic defenses are not prejudicial per se." *Zafiro,* 506 U.S. at 538.

Furthermore, when joint trials are conducted, "jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001); *see also Zafiro*, 506 U.S. at 539 ("[L]imiting

instructions often will suffice to cure any risk of prejudice."). The mere potential for confusion alone is not enough to overcome "society's interest in the speedy and efficient resolution of criminal trials." *Stanford*, 266 F.3d at 459.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief, finding that a joint trial was appropriate and there was no need for separate trials or separate juries. The court explained in relevant part:

> "There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v. Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). A trial court must sever the trial of codefendants on related offenses only when the defendant shows that "severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). *See also Etheridge*, 196 Mich App at 53. To show that severance is necessary, a defendant must provide the court with a supporting affidavit, or make an offer of proof, "that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v. Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). Such a showing is not made by codefendants' plans to present inconsistent defenses. *Id*. at 349. The Supreme Court in *Hana* further explained:

> > "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other.

16

Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the codefendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Hana*, 447 Mich at 349–350, quoting *State v. Kinkade*, 140 Ariz 91, 93; 680 P2d 801 (1984).]

"The use of separate juries is a partial form of severance to be evaluated under the standard, set forth above, applicable to motions for separate trials." *Id*. at 331.

Nothing in the record on appeal demonstrates the prejudice required by MCR 6.121(C). Jackson argued that he was not present during the shooting but, even if he was present, he lacked the necessary intent to be convicted of first-degree murder. Hearn argued that he was not present during the shooting but, even if he was present, he did not aid or abet the crimes. Thus, the defenses were not so antagonistic that they could not both be believed. *See Hana*, 447 Mich. at 349-350. Rather, in some ways, they were complimentary. Both defendants argued that the prosecutor's theory that they plotted for revenge against French was far-fetched and undocumented. The trial court did not abuse its discretion by denying severance under MCR 6.121(C).

Under MCR 6.121(D), a trial court nevertheless has the discretion to grant a request for severance "on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." When determining if severance is appropriate, a trial court may consider factors like "the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence" and "the convenience of witnesses." MCR 6.121(D).

Jackson argues that, even if severance was not mandated, it would have promoted fairness because Hearn's statements were admitted against Jackson to establish premeditation. Jackson argues that, if the cases had been severed, there would have been a lack of evidence of premeditation necessary to convict. But as we discuss later in this opinion, Hearn's statements were properly admitted against Jackson. Because the same evidence was admissible against both defendants, Jackson cannot establish that severance would have resolved any confusion resulting from the nature of the evidence. Accordingly, we also conclude that the trial court did not abuse its discretion by denying severance under MCR 6.121(D).

*Jackson*, 2016 WL 6127659 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the defendants did not present mutually exclusive or antagonistic defenses. Both defendants denied committing the crime, and Petitioner argued that he did not have the requisite intent for

18

first-degree murder and co-defendant Hearn argued that he was merely present and did not aid and abet the crime. Second, as discussed *infra*, co-defendant Hearn's out-of-court statements to Petitioner were admissible against Petitioner and did not violate his confrontation rights – whether they were tried jointly, separately, or in one trial with two juries. Consequently, Petitioner fails to show that his due process rights were violated by a joint trial. Habeas relief is not warranted on this claim.

## C.   Confrontation Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting evidence of text messages that non-testifying co-defendant Hearn sent to him in order to prove premeditation.[1] Respondent contends that this claim lacks merit.

The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause provides criminal

---

[1] In his habeas petition, Petitioner did not cite to portions of the trial transcript that discussed the admission of the prison letters, but only discusses the text messages. ECF No. 1, PageID.13. The State therefore argues that Petitioner has abandoned his claims about the prison letters. ECF No. 8, PageID.63. But the Court of Appeals did address whether the admission of the texts as well as the letter(s) implicated the Confrontation Clause, and this Court will do so as well.

defendants the right to confront and cross-examine witnesses against them. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant. *California v. Green*, 399 U.S. 149, 155-58 (1970). The Sixth Amendment protections, however, are not so broad as to exclude the admission of all hearsay statements against a defendant despite his or her inability to confront the declarant at trial. *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). The constitutionality of admitting a hearsay statement depends on whether the statement is testimonial or non-testimonial in nature and on the circumstances surrounding the making of the statement.

In *Bruton v. United States*, 391 U.S. 123, 126 (1968), the Supreme Court ruled that the admission at a joint trial of a non-testifying co-defendant's confession to police which implicates the defendant violates the Confrontation Clause even if the trial court instructs the jury not to consider the incriminating statements in deciding the defendant's guilt.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the *testimonial* statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include preliminary hearing

testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in pendency and furtherance of a conspiracy. *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007). Additionally, the Confrontation Clause is not implicated, and need not be considered, when non-testimonial hearsay is at issue. *Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and therefore permits their admission even if they lack indicia of reliability"); *Doan v. Carter*, 548 U.S. 449, 458 (6th Cir. 2008).

The Michigan Court of Appeals considered this claim on direct appeal, applied the foregoing standards, and denied relief. The court explained in relevant part:

> "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v. Walker* (On Remand), 273 Mich. App 56, 60-61; 728 NW2d 902 (2006). "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witnesses." *People*

*v. Watson*, 245 Mich. App 572, 584; 629 NW2d 411 (2001) (quotation marks and citation omitted). A statement "is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v. Dendel* (On Second Remand ), 289 Mich. App 445, 453; 797 NW2d 645 (2010). On the other hand, statements are nontestimonial when they are "made informally to an acquaintance, not during a police interrogation or other formal proceeding...or under circumstances indicating that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal prosecution.'" *People v. Taylor*, 482 Mich. 368, 378; 759 NW2d 361 (2008), citing *Crawford v. Washington*, 541 U.S. 36, 68; 124 S Ct 1354; 158 LEd2d 177 (2004), and quoting *Davis v. Washington*, 547 U.S. 813, 822; 126 S Ct 2266; 165 LEd2d 224 (2006).

***

Here, defendants were longtime friends. After Hearn was shot in April 2014, they exchanged text messages about the incident and plotted retaliation. There is no indication that the purpose of these text messages, let alone the primary purpose, was to "'establish or provide past events potentially relevant to later criminal prosecution.'" *Id.* at 378, quoting *Davis*, 547 U.S. at 822. Similarly, the letters exchanged between defendants in jail were informal and passed in secret, in violation of jail rules requiring inmates to communicate through the United States mail. None of defendants' communications were made during a police interrogation or formal proceeding. Therefore, the Confrontation Clause was not implicated.

*Jackson*, 2016 WL 6127659 at *2-3 (discussion of *Taylor* omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Co-defendant Hearn's text messages and prison letters were relevant to the issues of motive and intent, were made to Petitioner informally, and were non-testimonial. Consequently, the admission of those statements did not violate Petitioner's constitutional rights, *see, e.g., United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) ("[S]tatements made to friends and acquaintances are non-testimonial."); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."), nor render his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### D.   Evidentiary Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting evidence that he and co-defendant Hearn discussed a rap song titled "Homicide." Respondent contends that this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner raised this claim on direct appeal and the Michigan Court of Appeals denied relief finding that the trial court did not violate state evidentiary rules nor abuse its discretion in admitting the evidence. The court explained:

> Pursuant to MRE 401, evidence is relevant when it has a tendency to make a material fact more or less probable. "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense. A material fact is one that is 'in issue' in the sense that it is within the range of litigated matters in controversy." *People v. Sabin* (After Remand), 463 Mich. 43, 57; 614 NW2d 888 (2000) (quotation marks and citation omitted). The prosecutor's theory of the case was that Hearn and Jackson plotted revenge against French and his family for his role in Hearn's shooting in April 2014. The facts that defendants listened to the song and

24

communicated about the lyrics—"kill up everything in his family"—as they planned to "smoke dem n* * * * *" and then later shot French, his two-year-old daughter, Kamiya, and his 12–year–old cousin, Chelsea, tended to make their plot for revenge more probable.

Jackson claims that the rap song nevertheless should have been excluded because it was more prejudicial than probative under MRE 403. MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v. McGhee*, 268 Mich. App 600, 613-614; 709 NW2d 595 (2005).

The "unfair prejudice" language of MRE 403 "'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.'" Moreover, admission of "[e]vidence is unfairly prejudicial when...[the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*People v. Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citations omitted).]

Jackson claims that defendants' discussion of the song, in April 2014, was too far removed from the shooting in July 2014. But the jury could infer that Hearn and Jackson were planning their revenge for those several months and only waited to commit the crimes until Jackson's tether was removed. Jackson also claims that the lyrics and the song's title were unfairly prejudicial, but they were offered to

show the parallel between the song and defendants' plot
and actions. As the trial court instructed, the jury was
required to judge the evidence by setting aside biases and
was free to reject the prosecutor's theory. We conclude that
Jackson has not established that the trial court abused its
discretion by admitting the challenged evidence.

*Jackson*, 2016 WL 6127659 at *3-4 (footnote omitted).

The state court's decision is neither contrary to Supreme Court
precedent nor an unreasonable application of federal law or the facts.
First, Petitioner is not entitled to relief on any claim that the Michigan
Court of Appeals erred in admitting the evidence under Michigan law.
As discussed, state courts are the final arbiters of state law and federal
courts will not intervene in such matters. *Lewis*, 497 U.S. at 780;
*Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*,
288 F.3d at 860. Habeas relief does not lie for perceived errors of state
law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the admission of the
evidence violated his federal constitutional rights. Although reasonable
jurists may disagree over balancing probative value against the risk of
unfair prejudice of a particular piece of evidence, the trial judge found
that the rap song discussed by Petitioner and co-defendant Hearn was
relevant and admissible under state law and provided some evidence of
Petitioner's retaliatory motive, intent, and method for committing the
shooting. But here, it bears noting that the time gap between when the

26

declarants listened to and discussed the lyrics of the rap song and when the declarants engaged in the criminal conduct weakens its probative value. Moreover, evidence that Defendant listened to a rap song titled "Homicide," containing lyrics describing an act similar to the one with which Defendant was charged, presents a higher risk of unfair prejudice because it requires the drawing of a link between the Defendant's intent and planning process in committing a specific crime and his appreciation for gangster-glorifying music. Simply to enjoy such music could reasonably be considered condemnable by the jury. Even an instruction to the jury, regardless of its careful wording, may not sufficiently mitigate a juror's "bias, sympathy, anger, or shock" here. Had the trial proceeded before this Court, admission of such evidence would have given this Court greater pause, treading dangerously close as it does to impermissible character evidence.

Nevertheless, the burden on a habeas petitioner is quite high. And federal courts sitting in habeas review are not to substitute their judgments for those of a state jurist's if within the realm of disputable reason, nor can they review a state court's determinations on state evidentiary law. And here, the state court found the lyrics and the Defendants' discussion of it to be more probative than prejudicial. Considering such heightened standards and limited scope of review, Petitioner has not established that the admission of the evidence was

erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### D. Jury Instruction Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court failed to instruct the jury on involuntary manslaughter as a lesser offense of murder. Respondent contends that this claim lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly. *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the

28

failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief finding that the instruction was not warranted. The court explained:

> In a criminal trial, the instructions given to a jury "must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *McGhee*, 268 Mich. App at 606. A jury instruction may be given for a necessarily included lesser offense, but not for a cognate lesser included offense. *People v. Reese*, 466 Mich. 440, 446; 647 NW2d 498 (2002); *People v. Heft*, 299 Mich. App 69, 74; 829 NW2d 266 (2012). "A necessarily included lesser offense is an offense in which all its elements are included in the elements of the greater offense such that it would be impossible to commit the greater offense without first having committed the lesser offense." *People v. Apgar*, 264 Mich. App 321, 326; 690 NW2d 312 (2004). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v. Cornell*, 466 Mich. 335, 357; 646 NW2d 127 (2002). A rational view of the evidence supports an instruction on a

necessarily included lesser offense when the differing
element or elements are "sufficiently in dispute so that the
jury may consistently find the defendant innocent of the
greater and guilty of the lesser included offense." *Id.* at 352
(citations omitted).

## A. COMMON–LAW INVOLUNTARY MANSLAUGHTER

\*\*\*

Common-law "[i]nvoluntary manslaughter is the
unintentional killing of another, without malice, during the
commission of an unlawful act not amounting to a felony
and not naturally tending to cause great bodily harm; or
during the commission of some lawful act, negligently
performed; or in the negligent omission to perform a legal
duty." *People v. Mendoza*, 468 Mich. 527, 536; 664 NW2d
685 (2003). "The kind of negligence required for
manslaughter is something more than ordinary or simple
negligence, however, and is often described as 'criminal
negligence' or 'gross negligence'[.]" *People v. Herron*, 464
Mich 593, 605; 628 NW2d 528 (2001) (citation omitted).
Common-law involuntary manslaughter is a necessarily
included lesser offense of murder. *Mendoza*, 468 Mich. at
540-541. Consequently, if a defendant is charged with
murder, an instruction for involuntary manslaughter must
be given if supported by a rational view of the evidence. *Id.*
at 541.

Here, a rational view of the evidence did not support a
common-law involuntary manslaughter instruction.
Jackson argues that he did not intend to shoot Kamiya. But
even if she was a victim of transferred intent, as he states
in his brief on appeal, he offers no factual support for the
remaining elements of this type of manslaughter. To the
contrary, shooting at French with the intent to commit
murder was a felony and firing a barrage of gunshots in a

crowded area would naturally tend to cause great bodily harm. Moreover, Jackson does not claim that he was negligently performing a lawful act or negligently failed to perform a legal duty. Therefore, the trial court did not plainly err by failing to provide an instruction on common-law involuntary manslaughter.

B. STATUTORY INVOLUNTARY MANSLAUGHTER

The elements of statutory involuntary manslaughter are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the death resulted from the discharge of a firearm, (4) at the time of the discharge, the defendant was intentionally pointing the firearm at the victim, and (5) the defendant did not have lawful justification or excuse for causing the death. [*People v. Smith*, 478 Mich. 64, 70; 731 NW2d 411 (2007).]

As the trial court found, statutory involuntary manslaughter is a cognate lesser offense of murder. *Id*. at 74; *People v. Heflin*, 434 Mich. 482, 497; 456 NW2d 10 (1990). Therefore, an instruction on that offense was not permissible and the trial court properly denied the request.

*Jackson*, 2016 WL 6127659 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Supreme Court has declined to determine whether due process requires jury instructions on lesser included offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a

31

capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it. The Supreme Court has since held that state courts are not constitutionally required to instruct capital case juries on crimes which are not lesser included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998). The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir.1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). The Sixth Circuit has also confirmed that first-degree murder is a non-capital offense in Michigan. *Scott*, 302 F.3d at 606; *see also Tegeler v. Renico*, 253 F. App'x 521, 524-25 (6th Cir. 2007) (due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner received a non-parolable life sentence). Consequently, an involuntary manslaughter instruction was not constitutionally required. Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Moreover, even if Petitioner states a cognizable claim, he is not entitled to habeas relief. As explained by the Michigan Court of Appeals, under common law, an instruction on involuntary

manslaughter was not required because it was not supported by the evidence presented at trial which showed that Petitioner went to the residence where the shooting occurred with the intent to retaliate against French, that he was armed, and that he fired multiple gunshots at the people outside the residence. Under statutory law, an instruction on involuntary manslaughter was not required because it is a cognate lesser offense of murder. Moreover, the trial court accurately instructed the jury about the elements of the charged offenses, the burden of proof, and other relevant matters at trial. Petitioner fails to establish that the jury instructions, taken as a whole, rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that...jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a). Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal. This case is **CLOSED**.

**IT IS SO ORDERED**.

Dated: January 29, 2021     s/Terrence G. Berg
                                     TERRENCE G. BERG
                                     UNITED STATES DISTRICT JUDGE